UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MICROMEM TECHNOLOGIES, INC., et ano.,

                        Plaintiffs,

        -against-                                                    14-cv-9145 (LAK)

DREIFUS ASSOCIATES LIMITED, et ano.,

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# MEMORANDUM OPINION

Appearances:

                        Michael A. Freeman
                        GREENBERG FREEMAN, L.L.P.
                        *Attorneys for Plaintiffs*

                        Daniel A. Kent
                        KENT LAW, P.C.
                        *Attorney for Defendants*

LEWIS A. KAPLAN, *District Judge.*

            This matter is before the Court on motions by defendants (1) Henry Dreifus to

dismiss for lack of personal jurisdiction and improper venue, or, alternatively, to dismiss several

causes of action for legal insufficiency,[1] and (2) Dreifus Associates Limited ("DAL") to dismiss for

---

[1]  DI 20.

2

improper venue.[2]  Both defendants request, in the alternative, that this action be transferred to the Middle District of Florida.  For the reasons that follow, the Court concludes that venue is not properly laid in this district and transfers the action to the Middle District of Florida.

*Facts*[3]

This case arises out of a long-term business relationship gone wrong between (1) Micromem Technologies, Inc. ("Micromem"), a Canadian corporation that develops and owns proprietary sensor technologies, (2) Micromem Applied Sensor Technology, Inc. ("MAST"), Micromem's wholly-owned American subsidiary, which has its principal place of business in Manhattan and markets and exploits Micromem's sensor technologies, (3) DAL, a Florida corporation headquartered near Orlando that provided consulting services to Micromem and MAST, and (4) Dreifus, a Florida citizen who is DAL's founder, chief executive officer, and sole shareholder.

The disputes in this lawsuit concern several different consulting agreements among the parties dating back to 2008.  Each was negotiated through a substantially similar sequence of exchanges.  *First*, plaintiffs communicated a project idea to DAL.  *Second*, DAL prepared a written proposal describing the work it intended to do and the proposed cost and submitted it to plaintiffs.  *Third*, if plaintiffs' approved the proposal, they issued one or more purchase orders back to DAL

---

[2]      DI 22.

[3]      On a Rule 12(b)(3) motion to dismiss for improper venue, "[t]he court must take all allegations in the complaint as true, unless contradicted by the defendants' affidavits." *U.S. E.P.A. ex rel. McKeown v. Port Auth. Of N.Y. and N.J.*, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001), *aff'd sub nom. McKeown v. Del. Bridge Auth.*, 23 F. App'x 81 (2d Cir. 2001).

3

describing the work DAL would perform and the cost. *Fourth*, if DAL approved the purchase order(s), it began work on the project and issued payment invoices back to plaintiffs. *Fifth*, plaintiffs sent payments to DAL.[4]

Throughout these negotiations and other dealings, DAL and its employees communicated with plaintiffs and sent and received orders, invoices, and payments exclusively from DAL's offices near Orlando, Florida,[5] while MAST and its employees communicated with defendants and sent and received orders, invoices, and payments primarily from MAST's Manhattan office.[6] DAL performed its obligations under these agreements primarily from its Florida offices, although it outsourced certain work to subcontractors in Florida, California, and China.[7] MAST performed primarily from its Manhattan office except that Van Fleet sometimes worked from his home office in Dutchess County, New York.[8]

The three agreements underlying plaintiffs' complaint are described below.

---

[4]      *See* Second Am. Compl. [DI 19] at ¶¶ 5, 50-52, 67, 69-73, 84-88, 91-93, 115-18, 120-21.

[5]      Am. Decl. of Henry Dreifus [DI 24] at ¶¶ 18-19; DAL's Mot. to Dismiss or Transfer [DI 23] at 5-6.

[6]      Decl. of Steven Van Fleet [DI 29] at ¶¶ 8-19; *see* DI 19 at ¶ 53.

Although Dreifus and other DAL employees never traveled to New York in connection with the projects at issue in this litigation, MAST's president (and primary actor in this litigation) Steven Van Fleet sometimes did visit DAL's offices in Florida in connection with these projects. *See* DI 24 at ¶¶ 30-31.

[7]      DI 24 at ¶¶ 21-27.

[8]      *See* DI 19 at ¶¶ 62-63; DI 29 at ¶ 4. Dutchess Country is located in the Southern District of New York.

4

1.   *The NEMT Project*

In May 2008, MAST agreed to provide one of its existing clients, NEMT, with a prototype device containing Micromem's proprietary sensor technology.[9]  MAST then contracted with DAL to manufacture the prototype for NEMT.[10]  After finishing the prototype, DAL sent it, along with certain documentation, to NEMT.[11]  NEMT, however, informed Dreifus that the prototype was defective and that the accompanying documentation was deficient.  It requested that DAL correct the problems.[12]  MAST, fearful of losing its contract with NEMT, contacted Dreifus also and requested that DAL remedy eleven specific defects and deficiencies.[13]  After DAL failed to take corrective action, NEMT rejected the prototype.[14]  MAST informed Dreifus in October 2011 that it would make no further payments on the NEMT project and seek reimbursement for interim payments already made.[15]

---

[9]      DI 19 at ¶¶ 82-83.

[10]     *Id.* at ¶ 84.

[11]     *Id.* at ¶ 95.

[12]     *Id.* at ¶ 96.

[13]     *Id.* at ¶¶ 96-101, 103.

[14]     *Id.* at ¶¶ 104-05.

[15]     *Id.* at ¶ 105.

The parties had agreed that DAL would complete the NEMT project in six stages. *Id.* at ¶ 86.  At the time this dispute arose, plaintiffs had received invoices for all six stages of the NEMT project, but made payments only for completion of the first three stages. *See id.* at ¶¶ 89-95.

5

2.      *The GSI Westwind Project*

In March 2011, MAST agreed to provide another company, GSI Westwind, with a prototype containing another of Micromem's proprietary sensor technologies for use in field testing.[16] In June 2012, MAST agreed also to provide GSI Westwind with a smaller version of the same prototype.[17] As with the NEMT project, MAST contracted with DAL to prepare and provide the prototypes.[18] DAL delivered the completed prototypes to GSI Westwind in November 2012.[19] Much like NEMT, however, GSI Westwind rejected the smaller prototype as defective and informed plaintiffs in January 2013 that it would make no more payments.[20] Plaintiffs, in turn, informed defendants that they would not pay any outstanding invoices on the GSI Westwind project.[21]

3.      *The Oil Pan Plug Sensor and Patent Inventorship Dispute*

In March 2011, after years of development by Van Fleet, MAST retained Rapid Prototypes, Inc. ("RPI") to build a prototype of a product that could be installed in a car and used

---

[16]
        *Id.* at ¶ 114.

[17]
        *Id.* at ¶ 116.

[18]
        *Id.* at ¶¶ 115, 117.

[19]
        *Id.* at ¶ 121.

[20]
        *Id.* at ¶ 140.

[21]
        *Id.*

        At the time this dispute arose, plaintiffs had made some payments to DAL for reaching "certain interim milestones on the GSI Westwind Project," but had not paid all outstanding invoices related to the project. *See id.* at ¶ 120.

to detect changes in the physical properties of motor oil (the "Oil Pan Plug Sensor").[22]  The project

head at RPI was Brian Von Herzen.[23]  As RPI developed the prototype, MAST hired DAL to assist

in drafting a provisional patent application for the Oil Pan Plug Sensor.[24]  DAL's proposal for the

provisional application, which MAST accepted, stated that "Mr. Dreifus will be the primary

writer/developer of the provisional patent" and that "[w]ork is to be performed primarily in

Maitland, FL."[25]  MAST then sent DAL a purchase order for the provisional application, which

contained the following clause:[26]

> Inventors are Steven Van Fleet, Henry Driefus [sic] and Brian von
> Hersen [sic].  All parties agree that assignment of this resultant patent
> is a precursor for receiving payment for these services.  Assignment
> documentation will be issued along with this Purchase Order.

While working on the provisional application, Dreifus developed an idea for

manufacturing nanoparticles that could be inserted into an oil filter to enhance the functionality of

the Oil Pan Plug Sensor.[27]  Van Fleet thought this idea had merit and included it in the provisional

---

[22]

Id. at ¶¶ 62-64.

[23]

Id. at ¶ 65.

[24]

Id. at ¶ 66.

[25]

DI 19-1 at 3.

[26]

DI 19-2.

The parties dispute whether the referenced assignment documentation, included as part of
Exhibit 2 to the Second Amended Complaint, actually was issued along with the purchase
order.  Compare DI 19 at ¶ 71, with DAL's Answer [DI 25] at ¶ 71.

[27]

DI 19 at ¶ 77.

application, which was filed September 2011.[28]  Notably, neither Dreifus nor DAL executed any assignment of their rights in the resultant patent prior to filing the provisional application.[29]  Further, notwithstanding the inventorship language in the purchase order, plaintiffs determined at some point prior to filing the application that Van Fleet should be listed as the sole inventor on the provisional application.[30]

MAST subsequently filed six non-provisional patent applications relating to the Oil Pan Plug Sensor, including application 13/621,599 (the "'599 application"), which claimed priority benefit of the provisional application drafted by Dreifus.[31]  All six non-provisional applications, including the '599 application, listed Van Fleet and Von Herzen as the only inventors.[32]  When Dreifus complained about not having been listed as an inventor on the '599 application, MAST submitted additional filings to the U.S. Patent & Trademark Office ("PTO") stripping out all claims from the pending applications relating to insertion of nanoparticles into an oil filter, allegedly Dreifus's only creative contribution to the development of the Oil Pan Plug Sensor.[33]

---

[28]
     *Id.* at ¶¶ 78-79.

[29]
     *Id.* at ¶ 81.

[30]
     *Id.* at ¶ 80.

[31]
     *Id.* at ¶¶ 123, 127.

[32]
     *Id.* at ¶ 124.

[33]
     *Id.* at ¶¶ 134-35.

In December 2014, the PTO issued U.S. patent number 8,924,166 (the "'166 patent") based on claims in the '599 application directed to the Oil Pan Plug Sensor.[34]  Van Fleet and Von Herzen are listed as the only inventors and MAST is listed as the owner on the '166 patent.[35] Defendants allegedly threatened to sue over the omission of Dreifus as an inventor on the '599 application and resultant patent.[36]

### 4.   Procedural History

Plaintiffs' filed the operative complaint on February 24, 2015, asserting six causes of action.  Count I is asserted against Dreifus only and seeks judgment, pursuant to 35 U.S.C. § 256, declaring that Dreifus has no inventorship rights in the '166 patent.[37]  Count II seeks an order of specific performance compelling Dreifus and DAL to assign their patent rights to MAST pursuant to the terms of the provisional application purchase order.[38]  Counts III and IV assert breach of contract claims against Dreifus and DAL arising out of the NEMT and GSI Westwind projects.[39] Count V alleges breach of warranty by Dreifus and DAL relating to the prototypes DAL delivered

---

[34]     Id. at ¶¶ 142, 148.

[35]     Id. at ¶ 149.

[36]     Id. at ¶ 147.

[37]     Id. at ¶¶ 150-56.

[38]     Id. at ¶¶ 157-65.

[39]     Id. at ¶¶ 166-78.

to NEMT and GSI Westwind.[40]  Count VI is asserted only against DAL and seeks a declaration that DAL is not entitled to any money claimed to be due in its outstanding invoices relating to various consulting projects, including NEMT and GSI Westwind.[41]

On March 17, 2015, Dreifus moved to dismiss the claims against him for lack of personal jurisdiction and venue, or, alternatively, to dismiss counts II through V against him for failure to state a claim.[42]  DAL moved to dismiss the claims against it for improper venue.[43]  Both defendants moved, in the alternative, to transfer this action to the Middle District of Florida.  DAL answered the complaint on the same day and asserted five counterclaims against plaintiffs seeking unpaid monies relating to five allegedly breached consulting agreements, including the NEMT and GSI Westwind projects and the provisional application drafting project.[44]  DAL seeks also an order requiring the inclusion of Henry Dreifus as a co-inventor on all patents and patent applications concerning the Oil Pan Plug Sensor.[45]  Dreifus has not answered the complaint.

In the course of briefing the motions to dismiss, plaintiffs dismissed counts III through V against Dreifus.[46]

---

[40]  *Id.* at ¶¶ 179-86.

[41]  *Id.* at ¶¶ 187-94.

[42]  DI 20.

[43]  DI 22.

[44]  DI 25.

[45]  *Id.* at 38 ¶ E.

[46]  Pls.' Opp'n Br. [DI 27] at 30.

10

*Discussion*

Because the Court concludes that this district is an improper venue, it addresses only that prong of defendants' motions.

*1.     Legal Standard*

A plaintiff facing a motion to dismiss for improper venue must make a *prima facie* showing that venue is proper in the chosen court.[47] The district court must accept facts alleged in the complaint as true and draw reasonable inferences in the plaintiff's favor.[48] In an action involving multiple defendants and claims, a plaintiff must show that venue is proper for each claim against each defendant.[49]

*2.     The Law of Venue in the Second Circuit*

Plaintiffs here assert that venue is proper in the Southern District of New York based on 28 U.S.C. § 1391(b)(2), which reads: "A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial

---

[47]

    *U.S. Commodity Futures Trading Comm'n v. Wilson*, 27 F. Supp. 3d 517, 536 (S.D.N.Y. 2014).

[48]

    *Id.*

[49]

    *Holmes v. Grant*, No. 03-cv-3426 (RJH), 2006 WL 851753, at *21 (S.D.N.Y. Mar. 31, 2006); *PI, Inc. v. Quality Prods., Inc.*, 907 F. Supp. 752, 757 (S.D.N.Y. 1995).

    There is some authority in this district that "dismissal of an improperly venued claim is not warranted if it is factually related to a properly venued claim and the claims could be considered one cause of action with two grounds of relief." *See, e.g., McKeown*, 162 F. Supp. 2d at 183 (internal quotation marks omitted).

11

part of property that is the subject of the action is situated." The Second Circuit has explained that "when a plaintiff relies on § 1391(b)(2) to defeat a venue challenge, a two-part inquiry is appropriate. First, a court should identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims. Second, the court should determine whether a substantial part of those acts or omissions occurred in the district where suit was filed."[50] The circuit has cautioned district courts to "take seriously the adjective 'substantial,'" explaining that venue is proper only if "*significant* events or omissions *material* to the plaintiff's claim" occurred in the chosen district.[51] The "'substantial part' test" is more rigorous than "the minimum contacts test employed in personal jurisdiction inquiries."[52]   The circuit has explained further that the substantiality inquiry is more qualitative than quantitative[53] and should focus on the relevant activities of the defendant, not the plaintiff.[54] "'[I]n most instances, the purpose of statutorily defined venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial.'"[55]

---

[50]   *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005) (citation omitted).

[51]   *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (emphases in original).

[52]   *See id.*

[53]   *Daniel*, 428 F.3d at 432-33.

[54]   *See id.* at 432 (citing *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995)); *see also I.M.D. USA, Inc. v. Shalit*, 92 F. Supp. 2d 315, 318 (S.D.N.Y. 2000); 17 JAMES W. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 110.04[1] at 110-41-42 & n.6 (3d ed. 2015).

[55]   *Daniel*, 428 F.3d at 432 (quoting *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183-84 (1979)) (emphasis in original).

12

This Court previously considered a similar venue challenge in *I.M.D.*   There, plaintiff, a diamond wholesaler located in New York City, sued defendant – a South Carolina-based consignee of plaintiff's diamonds – for alleged failure to pay for or return to plaintiff approximately $80,000 of entrusted diamonds.[56]   The parties initially met and negotiated the consignment agreement in Brooklyn and later expanded the agreement while defendant was visiting New York.[57]  The diamonds themselves were located in South Carolina, and defendant allegedly formed the decision to refuse to return or pay for the diamonds in South Carolina.[58]

In analyzing the venue question, this Court likened the "substantial part" venue inquiry to the concept of proximate cause in tort law[59] and determined that the formation and expansion of the contract, while necessary parts of the events or omissions giving rise to the claims, were not sufficiently substantial to establish venue.[60]   Rather than dismiss the action, the Court transferred it to the District of South Carolina, where "the events and omissions most closely related

---

[56]
    *I.M.D.*, 92 F. Supp. 2d at 315.

[57]
    *Id.*

[58]
    *Id.* at 317.

[59]
    *Id.*

[60]
    *Id.* at 318.

to the alleged breach–[defendant's] failure to pay for or return the diamonds–unmistakably occurred."[61]  Other factors also supported transferring the action to South Carolina, including the location of evidence concerning defendant's alleged breach, and the defendant's convenience.[62]

    3.    *Analysis*

      Using the framework established in *Daniel*, this Court first must "identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims."  Counts II through VI stem from defendants' alleged breaches of various consulting agreements between the parties.  The alleged breaches include (1) both defendants' failures to assign to MAST their rights in patents resulting from the provisional application, and (2) DAL's failure to design, manufacture, and deliver working prototype products to NEMT and GSI Westwind.[63]  Plaintiffs' remaining claim, Count I, seeks a declaration that Dreifus has no rights to inventorship on the '166 patent "because he made no inventive contribution to the patent."[64]  The acts or omissions pertinent to that claim

---

61

    *Id.*

62

    *Id.* at 317-18; *see also Am. Motorists Ins. Co. v. Roller Bearing Co. of Am., Inc.*, No. 99-cv-9133 (AGS), 2001 WL 170658, at *6 (S.D.N.Y. Feb. 21, 2001) (transferring breach of contract action to Connecticut on improper venue grounds because (1) "[e]ven if some negotiation occurred in New York, and even if [defendant] was to pay premiums into New York, any failure by [defendant] to pay [plaintiff] occurred in Connecticut, where [plaintiff] has its principal place of business," (2) "[e]vidence concerning [defendant's] alleged failure to pay will be in Connecticut," and (3) New York was "less convenient for [defendant]" than Connecticut).

63

    Notably, DAL provided the allegedly deficient prototypes directly to NEMT and GSI Westwind.  DI 19 at ¶¶ 95, 121.

64

    *See id.* at ¶ 155.

14

primarily concern Dreifus's work on the provisional application and the relationship between that work and the '166 patent.

Second, the Court must "determine whether a substantial part of those acts or omissions occurred in the district where suit was filed." In other words, this Court must ask whether "*significant* events or omissions *material* to the plaintiff's claim" occurred in this district, mindful of the Second Circuit's guidance that this analysis must be qualitative, focus on defendants' conduct, and be more rigorous than a minimum contacts analysis.

Here, the acts and omissions giving rise to plaintiffs' claims – DAL's alleged breaches and Dreifus's contributions to the '166 patent – occurred primarily outside the Southern District of New York. It is undisputed that "[a]ll work performed and products created by DAL in connection with the agreements at issue in this case" – including the NEMT, GSI Westwind, and Oil Pan Plug Sensor projects – "was performed in DAL's offices near Orlando, Florida, with some additional work performed by DAL subcontractors located in Florida, California, and China. None of this work was performed in New York."[65] Thus, if DAL failed, as alleged, to adequately design, manufacture, and deliver workable prototypes to NEMT and GSI Westwind, its failure occurred in Florida. And if Dreifus made an inventive contribution to the '166 patent, he did so in Florida. Much like the defendant in *I.M.D.*, "the events and omissions most closely related to the alleged breach . . . unmistakably occurred" in the defendants' home district.

This is not to say that no act or omission giving rise to plaintiffs' claims occurred in this district. Indeed, it is undisputed that when MAST and DAL negotiated contract terms and

---

[65]    DI 24 at ¶ 27.

communicated about the parties' various consulting projects, MAST often did so from its

headquarters in New York.  MAST received DAL's proposals and invoices in New York, and it

mailed purchase orders and payments from New York.[66] Van Fleet spent three years developing the

Oil Pan Plug Sensor from MAST's headquarters and his home office, both located in this district,

before he enlisted Dreifus's help drafting the provisional application.[67] Each of these acts likely was

a necessary link in the chain of events giving rise to plaintiffs' claims.  Indeed, if the underlying

contracts never had been formed and the terms never set, then DAL could not have breached its

obligations.  And if Van Fleet never had developed the Oil Pan Plug Sensor, then Dreifus never

would have had the opportunity to contribute to the resultant patent.[68] But, as this Court recognized

---

[66]

Although the Court need not reach the issue, these contacts may be enough for a New York court to exercise personal jurisdiction over DAL under both New York's long-arm statute and a minimum contacts analysis.  As the Second Circuit expressly cautioned, however, a plaintiff must demonstrate more than a defendant's minimum contacts with a forum to establish venue.  See Gulf Ins., 417 F.3d at 357.

[67]

DI 19 ¶¶ 62-63.

[68]

The question of venue with respect to the inventorship claim is a closer call than the contract claims, because although Dreifus's contributions took place in Florida, those of the listed co-inventors did not. Specifically, Van Fleet allegedly performed his work on the Oil Pan Plug Sensor from offices in this district, see DI 19 at ¶¶ 62-63, and Von Herzen allegedly performed his work in Nevada, see DI 27 at 25 n.18. Nonetheless, this claim turns primarily on the question of whether or not Dreifus made an inventive contribution to the provisional application and '166 patent, not the relative value of Dreifus's contributions compared to Van Fleet's and Von Herzen's. Accordingly, a substantial part of the acts or omissions underlying Count I did not occur in this district.

Notably, even if the Court held otherwise, the disposition of defendants' motions would not change, as venue clearly is improper for plaintiffs' claims arising out of the parties' consulting agreements, and plaintiffs "must show that venue is proper as to each claim against each defendant." Holmes, 2006 WL 851753, at *21. The result is the same even under the standard in McKeown, as plaintiffs' inventorship claim and their other claims are wholly separate and cannot be considered "one cause of action with two grounds of relief." See 162 F. Supp. 2d at 183; see also Am. Motorists, 2001 WL 170658, at *2 n.1, *6 (determining that venue was improper as to beach of contract claims, and transferring the

in *I.M.D.*, many events were necessary historical antecedents to defendants' alleged actionable acts and omissions. This Court's task is to determine whether the events that took place in this district compose a substantial part of plaintiffs' claims. Those events, however, nearly all relate to plaintiffs' conduct, not defendants', and nearly all concern plaintiffs' performance under the parties' agreements, not defendants' alleged breaches.

In the last analysis, in light of the Second Circuit's guidance in *Daniel* and *Gulf Insurance*, the Court holds that a substantial part of the acts or omissions giving rise to plaintiffs' claims did not occur in this district and that venue therefore is improper. A substantial part of the events giving rise to plaintiffs' claims, however, did occur in the Middle District of Florida. The interests of justice would be served by transferring this case to that district, rather than by dismissing the case outright.[69]

### Conclusion

For the foregoing reasons, defendants' motions [DI 20, DI 22] are granted to the extent that the Court concludes that venue is improper in the Southern District of New York and the action is transferred to the Middle District of Florida pursuant to 28 U.S.C. § 1406(a). The Court

---

entire action pursuant to § 1406(a) without reaching the other two causes of action because "[plaintiff] has not demonstrated that venue is proper under § 1391(a)(2) as to *all claims*") (emphasis added).

[69]  *See Fugazy Int'l Travel Grp., Inc. v. Fugazy Executive Travel, Inc.*, No. 00-cv-5927 (LAK), 2001 WL 50936, at *2 (S.D.N.Y. Jan. 22, 2001).

Indeed, plaintiffs "request that this action be transferred to another forum where this action otherwise could have been brought pursuant to 28 U.S.C. § 1406(a) instead of being dismissed" if the Court determines that venue is improper in this district. DI 27 at 29.

need not consider Dreifus's argument that this Court lacks jurisdiction over his person, as he concedes he is subject to jurisdiction in the transferee district.  Defendants' other arguments remain for consideration by the transferee court to whatever extent they are not moot.

SO ORDERED.

Dated:      December 8, 2015

_____
Lewis A. Kaplan
United States District Judge